# Exhibit F

Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
Howard Clark, Todd Hall,        )
Angela Pirrone,                 )
                                )
          Plaintiffs,           )
                                )
  VS.                           )     NO. C 18-6113 WHA
                                )
The Hershey Company,            )
                                )
          Defendant.            )
_____)
```

San Francisco, California
Monday, March 4, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:          Law Offices of Ronald A. Marron
                         651 Arroyo Drive
                         San Diego, CA   92103

                    BY:  **MICHAEL T. HOUCHIN, ESQ.**


For Defendant:           BraunHagey & Borden
                         351 California Street, 10th Floor
                         San Francisco, CA   94105

                    BY:  **DAVID KWASNIEWSKI, ESQ.**
                         **MATTHEW BORDEN, ESQ.**



Reported By:             Vicki Eastvold, RMR, CRR
                         Official Reporter

| | |
|---|---|
| 1 | **Monday - March 4, 2019**                                    **9:34 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Calling Civil Action 18-6113, Clark versus |
| 5 | the Hershey Company. |
| 6 | Counsel, please state your appearances for the record. |
| 7 | **MR. HOUCHIN:**  Good morning, Your Honor.  Michael |
| 8 | Houchin on behalf of the plaintiffs and the proposed class. |
| 9 | **THE COURT:**  Thank you. |
| 10 | **MR. KWASNIEWSKI:**  Good morning, Your Honor.  David |
| 11 | Kwasniewski on behalf of defendant, The Hershey Company.  And |
| 12 | with me is Matthew Borden. |
| 13 | **THE COURT:**  Okay.  Welcome to everybody. |
| 14 | How can I help you today? |
| 15 | **MR. HOUCHIN:**  Well, Your Honor, I think there's two |
| 16 | issues that we haven't been able to resolve.  We worked out a |
| 17 | deposition schedule earlier. |
| 18 | The first issue is costs associated with the depositions |
| 19 | that were supposed to take place last week.  It was Friday |
| 20 | before the depositions were supposed to take place and The |
| 21 | Hershey Company canceled the depositions.  And we have |
| 22 | nonrefundable travel costs that we think that we should be |
| 23 | entitled to reimbursement under Rule 30(g). |
| 24 | And I guess the second issues deals with staging of |
| 25 | discovery. |

1          **THE COURT:**  Is what?

2          **MR. HOUCHIN:**  Staging of discovery.  The Hershey

3    Company contends that they should produce documents related to

4    malic acid first.  We also want other documents like product

5    labels and sales information that we think is relevant to class

6    certification.

7          **THE COURT:**  Let's go to the first one.  What was the

8    reason that Hershey canceled the deposition?  Well, first of

9    all, who noticed the depositions?

10         **MR. HOUCHIN:**  The Hershey Company noticed them.  And I

11   guess I'll let defense counsel --

12         **THE COURT:**  And they noticed them for where?

13         **MR. HOUCHIN:**  One was supposed to be in New York City

14   where our New York client lives.  The second one, which was why

15   we filed the letter brief, there was a prior agreement where we

16   were going to take plaintiff Hall's deposition in New York City

17   the day after plaintiff Pirrone's deposition.  However, the --

18   Hershey Company noticed the deposition to take place in Los

19   Angeles instead of New York City.

20         **THE COURT:**  But did that before or after the

21   agreement?

22         **MR. HOUCHIN:**  That was after the agreement, Your

23   Honor.

24         **THE COURT:**  Is that true?

25         **MR. KWASNIEWSKI:**  No, Your Honor.

1        **THE COURT:**  What's your version?

2        **MR. KWASNIEWSKI:**  We, beginning of January, asked

3  plaintiffs for the availability of the plaintiffs for a

4  deposition.  Plaintiffs, after some back and forth, responded

5  by telling us that Pirrone was available in New York and

6  plaintiff Hall was available in New York.

7        We responded to that by saying initially we can go forward

8  on that basis.  30 minutes later we said:  Actually, hold that.

9  We want to talk about when the other plaintiff is available.

10  Because plaintiff Clark is in California and plaintiff Hall is

11  in California.  So if they're both available around the same

12  time, we want to coordinate that.

13        They didn't get back to us for two weeks.  When we finally

14  followed up, they said that plaintiff Clark was available in

15  San Francisco.  So we sent deposition notices for each of the

16  plaintiffs for the location where they reside.

17        And then in response to that, they announced that they

18  were not going to make plaintiff Hall available in New York.

19  That even though we had noticed his deposition they had made

20  travel plans in the interim, and they filed the letter brief.

21        And on top of that, they also hadn't responded to our

22  subpoena which we served in January.

23        So given their failure to produce documents and their

24  refusal to make plaintiff Hall available where we noticed him,

25  we withdrew the deposition notices.

1    **THE COURT:** I'm sorry. Were the airplane tickets on

2    your side purchased before or after the written notices of the

3    depositions?

4    **MR. HOUCHIN:** We purchased them before, Your Honor.

5    After we were discussing about doing the depositions in New

6    York City. We never discussed doing plaintiff Hall's

7    deposition in Los Angeles on that day, which would have been

8    February 26.

9    **THE COURT:** But he says that even though he agreed, 30

10   minutes later he said: Cancel the agreement.

11    Is that true?

12   **MR. HOUCHIN:** Correct, Your Honor. But then on Friday

13   afternoon, the Monday before the depositions (sic), they

14   canceled all of them. We thought that they were still going to

15   proceed with plaintiff Pirrone's deposition in New York City.

16   By that time we'd already booked travel arrangements.

17   **THE COURT:** Why didn't you do at least the New York

18   one?

19   **MR. KWASNIEWSKI:** Well, Your Honor, we didn't think it

20   made sense to proceed with any of the depositions when one of

21   the witnesses wasn't going to appear and they hadn't produced

22   any of the documents we sought with our subpoena.

23   **THE COURT:** What do you answer -- let's hold that

24   first thought.

25    What do you say about the documents part?

1       **MR. HOUCHIN:**  Your Honor, we started talking about

2   these depositions long before a subpoena was even served.  The

3   subpoena was directed to our law firm and it's incredibly

4   overbroad.  It deals with virtually no documents that the

5   plaintiffs would have any personal knowledge of.

6       We don't see why the documents would even be relevant to

7   the plaintiffs' depositions.  They're seeking things like

8   advertising from our law firm.  Something --

9           **THE COURT:**  Counsel made it sound like these were

10   subpoenas directed to the plaintiffs.

11           **MR. HOUCHIN:**  No.  They subpoenaed our law firm.

12           **THE COURT:**  Why didn't you tell me it was directed to

13   the law firm?  Why did you hide that fact from me?

14       **MR. KWASNIEWSKI:**  Well, I'm not trying to hide that

15   fact, Your Honor.

16           **THE COURT:**  Why is it relevant to get documents out of

17   the law firm?

18       **MR. KWASNIEWSKI:**  Because one of the key issues in

19   this case is how the plaintiffs were recruited.  For example,

20   plaintiff Clark only filed -- only purchased the product after

21   his lawyer sent a demand letter to The Hershey Company.  So we

22   think there are real reasons here to doubt that the plaintiffs

23   suffered any actual injury.  And since the law firm is in

24   possession of its recruitment materials, that's why we targeted

25   them with the subpoena.

1          THE COURT:  When was the subpoena served?

2          MR. KWASNIEWSKI:  January 23.

3          THE COURT:  How long has that been?  Has anyone

4  brought a motion to quash that?

5          MR. HOUCHIN:  Yes, your Honor.  We filed the motion to

6  quash the subpoena in the Southern District of California where

7  our law firm is located.

8          THE COURT:  When was that filed?

9          MR. HOUCHIN:  That was filed last week or two weeks

10  ago.  I can't recall the exact date when it was filed, Your

11  Honor.

12          THE COURT:  Does your letter say when it was filed?

13          MR. HOUCHIN:  No, it doesn't, Your Honor.

14          THE COURT:  Do you know when it was filed?

15          MR. KWASNIEWSKI:  Yeah.  I have it right here, Your

16  Honor.

17      Yes.  That was filed on February 21.

18          THE COURT:  February 21.  When were the notices of

19  deposition of the plaintiffs?

20          MR. HOUCHIN:  They first served the notices in early

21  January.  That's when we started talking about scheduling the

22  depositions was through January and early February.

23          THE COURT:  And the three notices were for the LA, San

24  Francisco and New York.

25          MR. HOUCHIN:  Originally.  And then we said that we

would make plaintiff Hall available in New York, which would be
the day after plaintiff Pirrone's deposition.  We thought that
would be most convenient for the parties and their counsel.  I
think it was unreasonable to expect us to have to go from New
York City to Los Angeles the next day and then to San Francisco
the day after that.

          THE COURT:  Well, put aside whether that's
unreasonable or not.  I'm just focusing on the date now.  The
date of the notices was what?

          MR. KWASNIEWSKI:  We served the deposition notices on
February 19.

          MR. HOUCHIN:  But those were the amended deposition
notices.

          THE COURT:  Wait a minute.  When were the original
notices?

          MR. KWASNIEWSKI:  That was back in January, I believe,
Your Honor.

          THE COURT:  All right.  Give me that date, please.

          MR. KWASNIEWSKI:  Yeah, I'm afraid I don't have that
date.

          THE COURT:  All right.

     Do you have it?

          MR. HOUCHIN:  I don't have that date.  But I can tell
you, Your Honor, it was -- the deposition notices were served
before the subpoena was served.

1      **THE COURT:**  All right.  Sometime in January the

2    original notices.  When was the subpoena on your firm?

3      **MR. HOUCHIN:**  I believe that was served January 23,

4    Your Honor.

5      **THE COURT:**  And when was this telephone call in which

6    the alleged agreement took place?

7      **MR. HOUCHIN:**  We had a phone call -- I believe it was

8    on January 23, and then there was a series of email exchanges

9    dealing with the deposition.

10      **THE COURT:**  Was that before or after the subpoena?

11      **MR. HOUCHIN:**  I think the January 23 phone call was

12    actually the same day that the subpoena was --

13      **THE COURT:**  Yes, but before or after?

14      **MR. HOUCHIN:**  I believe before, Your Honor.  We had no

15    knowledge of the subpoena during the time of the phone call.

16      **THE COURT:**  All right.  Telephone call re what?

17      **MR. HOUCHIN:**  Deposition scheduling.

18      **THE COURT:**  In that phone call, was there any

19    reference to the subpoena that Hershey was going to be serving

20    on the plaintiff firm?

21      **MR. HOUCHIN:**  There was no mention of the subpoena

22    during that phone call.

23      **THE COURT:**  True, counsel?

24      **MR. KWASNIEWSKI:**  That's my understanding, Your Honor.

25      **THE COURT:**  All right.  What was the next step after

1   the phone call on January 23?

2           MR. HOUCHIN:  There was a series of email exchanges.

3   And during one of those mail exchanges, counsel for defendants

4   confirmed that Mr. Hall's deposition could take place in New

5   York City the day after plaintiff Pirrone's deposition.

6           THE COURT:  That was by email?  What date was that

7   email?

8           MR. HOUCHIN:  That email was dated February 1.

9           THE COURT:  And who could -- which plaintiff could go

10  in New York?

11          MR. HOUCHIN:  Well, one of the plaintiffs resides in

12  New York.

13          THE COURT:  You said the guy in LA.  What's his name?

14          MR. HOUCHIN:  Plaintiff Hall, Your Honor.

15          THE COURT:  Hall?

16          MR. HOUCHIN:  Yes.  Todd Hall.

17          THE COURT:  H-A-L-L.

18          MR. HOUCHIN:  Yes.

19          THE COURT:  Hall could be New York.  What, on the next

20  day?

21          MR. HOUCHIN:  Yes.  The day after plaintiff Pirrone's.

22          THE COURT:  Then 30 minutes later there was a

23  cancellation of that.

24          MR. HOUCHIN:  We didn't understand it as a

25  cancellation.  What The Hershey Company asked was to set

1   plaintiff Clark's deposition.  Plaintiff Clark is the San

2   Francisco client.  We got back to counsel for Hershey and set

3   that deposition the day after plaintiff Hall's deposition was

4   supposed to take place that.  That would have been February 27.

5              THE COURT:  So who was the one that lives in New York?

6         MR. HOUCHIN:  Plaintiff Pirrone.

7              THE COURT:  How do you spell that?

8         MR. HOUCHIN:  P-I-R-R-O-N-E.

9              THE COURT:  Okay.  And what date were you talking

10  about in that email for the Hall and -- I'm sorry -- for the

11  Pirrone deposition?

12        MR. HOUCHIN:  That would be February 25 in New York

13  City.

14             THE COURT:  And when would Hall have been?

15        MR. HOUCHIN:  February 26 in New York City, the day

16  after.

17             THE COURT:  And when would Clark then have been?

18        MR. HOUCHIN:  February 27 in San Francisco.

19             THE COURT:  So that's what -- now, did Clark -- did

20  Hershey ever commit to Clark in San Francisco on February 27?

21        MR. HOUCHIN:  Yeah.  The week before the depositions

22  they served amended deposition notices for plaintiff Clark

23  noticing the deposition on February 27 in San Francisco as we

24  agreed to.  But then the Friday before the depositions were

25  supposed to take place they informed us that they were

1    canceling the depositions.

2         **THE COURT:** Wait a minute. Now, you got ahead of me a

3    bit. Did you get back to -- in the email that happened on

4    February 1, what was said about Clark in San Francisco on

5    February 27?

6         **MR. HOUCHIN:** We were confirming with our client his

7    availability. And then I believe on or around February 14 we

8    got back to defense counsel saying that plaintiff Clark could

9    be available on February 27 as was discussed.

10        **THE COURT:** So just up to February 14, had there ever

11   been any connection made between the subpoena that was served

12   on your law firm and whether or not these depositions would go

13   forward?

14        **MR. HOUCHIN:** No. There was no communications to that

15   effect. In fact, it was in defendant's letter brief when they

16   first brought up the issue that they wanted the subpoena

17   documents for purposes of the plaintiffs' depositions.

18        **THE COURT:** When were the amended notices?

19        **MR. HOUCHIN:** The amended notices were served on

20   February 19.

21        **THE COURT:** And those provided for what?

22        **MR. HOUCHIN:** Those provided that plaintiff Pirrone's

23   deposition would take place on February 25 in New York as was

24   discussed.

25        The amended notice for Todd Hall had his deposition taking

1    place on February 26, but it noticed the location for Los

2    Angeles, which we never discussed.

3         It was our understanding that they wanted to take

4    plaintiff Hall's deposition in New York City based on our prior

5    conversations and our email correspondence.  But when they

6    served the amended deposition notice for Todd Hall, that's the

7    first time that I guess they wanted to proceed with his

8    deposition in LA.

9         THE COURT:  And what day was Clark in the amended

10   notices?

11        MR. HOUCHIN:  In the amended notice, plaintiff Clark's

12   deposition was set to take place on February 27 in San

13   Francisco, which is what we discussed and what we agreed to.

14        THE COURT:  So -- all right.  That's February 19.

15   What then happened?

16        MR. HOUCHIN:  Shortly after the deposition notices

17   were served, on the same day I wrote an email to opposing

18   counsel notifying them that we didn't discuss doing plaintiff

19   Hall's deposition in Los Angeles.  I said that we could make

20   plaintiff Hall available in New York City on February 26 as we

21   discussed.

22        The Hershey Company refused to take his deposition in New

23   York City and insisted that we travel to Los Angeles for his

24   deposition.  And that's why we filed the letter brief

25   requesting a protective order.

1    **THE COURT:**  When did you buy the airplane tickets?

2    **MR. HOUCHIN:**  We bought the airplane tickets, I

3    believe, about a week before the depositions were supposed to

4    take place -- or, I mean a week before they were noticed, I

5    believe, Your Honor.

6    **THE COURT:**  What day was that?

7    **MR. HOUCHIN:**  I don't have the exact date, but --

8    **THE COURT:**  Like February 12?

9    **MR. HOUCHIN:**  Sometime around then.  And we didn't

10   cancel the airline tickets because we thought that they were

11   still going to proceed with plaintiff Pirrone's deposition in

12   New York City.  And we never received notification that they

13   were going to cancel that deposition until the Friday before,

14   which would have been February 22, I believe.

15   **THE COURT:**  February 22.  What happened?

16   **MR. HOUCHIN:**  We received notification from The

17   Hershey Company that they're not moving forward with any of the

18   plaintiffs' depositions.

19   **THE COURT:**  When was the -- did Hershey give -- what

20   reason did Hershey give you on February 22?

21   **MR. HOUCHIN:**  I'll let defense counsel speak to that.

22   **THE COURT:**  Well, no.  You can speak to what they told

23   you.

24   **MR. HOUCHIN:**  Well, they told me that they didn't want

25   to proceed with any of the depositions since we weren't making

1    plaintiff Hall available in Los Angeles.  I again reiterated

2    that we booked nonrefundable travel accommodations and were

3    still willing to make plaintiff Hall available in New York City

4    the very next day after plaintiff Pirrone.  Plus, it doesn't

5    make sense why they'd want to travel to Los Angeles the day

6    after the deposition in New York when we're willing to make

7    plaintiff Hall available in New York the very next day.

8           **THE COURT:**  All right.

9       Is that true?

10          **MR. KWASNIEWSKI:**  Well, I think there's a couple of

11   steps in that chronology that's mis --

12          **THE COURT:**  I'd like for you to clarify it.

13          **MR. KWASNIEWSKI:**  Sure.  So I think going back to the

14   correspondence before the amended depositions were served,

15   there was a preliminary statement saying that we can confirm

16   the depositions in New York.  30 minutes later we wrote back

17   and said:  Actually, before confirming them, can you let us

18   know about Mr. Clark's availability?  It will make most sense

19   to confirm all three depositions simultaneously so we have one

20   clear schedule.

21      After that we didn't hear from plaintiff's counsel for two

22   weeks.  We had to follow up again to try to learn Mr. Clark's

23   availability.

24      When they told us his availability and he would be

25   available in SF the day after Mr. Hall was available, we

1  noticed Mr. Hall for Los Angeles and Mr. Clark for SF.  They

2  responded saying they wouldn't make Mr. Hall available.  They

3  filed their letter brief.  And on February --

4          **THE COURT:**  But I thought you'd already had an

5  agreement that you would produce Hall in New York on the 26th.

6          **MR. KWASNIEWSKI:**  No, Your Honor.  We didn't agree to

7  that.  Or, to the extent we did, we agreed to it for 30

8  minutes.  But what we said --

9          **THE COURT:**  Well, wait.  No.  The way you just pitched

10  it was that you agreed to that, and then you said:  Well, hold

11  that until we get Clark in the picture.  And you wanted to know

12  when he was available.  Eventually they said the 27th.

13      But why would that undo the New York part of having the

14  two depositions in New York?

15          **MR. KWASNIEWSKI:**  Well, what happened after that I

16  think is important.

17      So they filed their letter brief on the 21st.  And that

18  same day, the Court issued its order setting this discovery

19  conference.  What the Court didn't do was grant their motion

20  for a protective order.

21      So the next day we followed up to see if Mr. Hall would be

22  available in LA.  And they said that they would not make him

23  available in LA.  He would only be available in New York.

24      And on top of that, it was now a week after the response

25  deadline for the subpoena.  So based on -- and we hadn't heard

1  anything from them.  So based on their failure to respond to

2  the subpoena, and their refusal to make Mr. Hall available in

3  accordance with his deposition notice, we decided to take all

4  of the depositions off calendar.

5      The point here --

6          **THE COURT:**  Yeah, but meanwhile he's got tickets.

7          **MR. KWASNIEWSKI:**  Well, that -- we didn't learn about

8  that until after we asked for Mr. Hall to be made available in

9  LA.  They didn't consult with us on their travel arrangements,

10  and we heard nothing from them.

11          **THE COURT:**  Maybe the thing to do is just say you

12  don't get to take any of these people's depositions.  I don't

13  think you've been fair here.  I think you tricked him.  I think

14  you tricked the plaintiffs.

15          **MR. KWASNIEWSKI:**  Not at all, Your Honor.

16          **THE COURT:**  Yes, you did.  Yeah, you did.  You said

17  that the guy Hall would be -- you would take his deposition in

18  New York.  And then you reneged on that 30 minutes later and

19  then said:  Oh, well, let's roll Clark into this, too.  So they

20  eventually get back to you two weeks later and say Clark in San

21  Francisco.

22      And then you renege on it again and say:  No, no.  Now

23  we're going to do Hall in LA in order to run up his costs.

24      That's what's going on here.  You think I don't understand

25  that?  How many years do you think I practiced law?  I

1  understand how you want to run up their costs.  Maybe the

2  answer is you don't get to take their depositions at all as a

3  penalty for what you've done here.

4      MR. KWASNIEWSKI:  Your Honor, we're not trying to

5  manipulate things or run up costs at all.  We thought it would

6  make more sense to depose everyone in the town where they live.

7      THE COURT:  No.  Why is that?  That's ridiculous.  You

8  just want to run up his cost to go to LA.  That doesn't make

9  sense to depose him in LA if he's willing to come to New York

10  and save everybody the trouble.

11      MR. KWASNIEWSKI:  Well, I don't see how that really

12  saves anyone any trouble.

13      THE COURT:  It saves him the trouble of having to fly

14  to LA.  It saves you the trouble of having to fly to --

15      No, but the big, giant company Hersheys has got plenty of

16  money to pay your law firm to go there.

17      MR. KWASNIEWSKI:  Well, Your Honor, what we are really

18  trying -- the ultimate goal here is to try to structure these

19  depositions so that we can get testimony from each of the

20  plaintiffs sequentially.

21      THE COURT:  And here's another thing.  You somewhere

22  in here say that they don't have the right to attend the other

23  guy's deposition.  You're crazy.  They're a party to the case

24  and they have the right to be there and hear them.  If you're

25  not a good enough cross-examiner to cross-examine the other

1   plaintiff and get past the point that he heard the other,

2   that's too bad, you're not a good enough cross-examiner.

3   You're not going to get away with that.  They can attend every

4   one of these depositions if they want.  They have a right to do

5   that.  They're a party.

6          MR. KWASNIEWSKI:  Your Honor, we're fine with that.

7   We're not trying to stop that from happening.  That's a

8   suggestion that they made for the first time in their letter

9   brief.  And as we said in our letter brief, they're absolutely

10  free to do that.  We're not trying to prevent that from --

11         THE COURT:  Why, then, isn't it okay to take his

12  deposition in New York if he's willing to be there, after

13  you've agreed to do it?  Why isn't it okay?  Why do you insist

14  on going to LA?

15         MR. KWASNIEWSKI:  Well, Your Honor, we think it makes

16  the most sense for everyone involved to have the depositions

17  where the plaintiffs reside.  You know, we have offices in New

18  York with video capabilities and we can video conference in to

19  them.  But when the plaintiffs are in California we think it

20  makes more sense for us to quickly and easily travel to the

21  places where they actually live.

22         THE COURT:  No.  That is a ridiculous proposition.  It

23  is crystal clear you're doing this to run up the cost and

24  impose this burden on the plaintiffs.  That's all that's going

25  on here.  I'm very disappointed that the defense counsel in

1    this case and that Hersheys would do such a thing.

2        All right.  Here's the answer to this.  Do you want these

3    depositions or not?

4            **MR. KWASNIEWSKI:**  Yes.

5            **THE COURT:**  All right.  You're going to pay for his

6    cost to go to New York.  You're going to do it.  This is -- you

7    did not behave in a proper way in this case.

8        These depositions are going to go forward in New York and

9    you're not going to get any of the documents out of that law

10   firm beforehand.  That came up after -- you never tied that in

11   to this.  These depositions are going to go forward and you're

12   not going to get away with that.  So you can take the

13   depositions of those two people in New York.

14       Is he still available in New York?

15           **MR. HOUCHIN:**  Your Honor, during our meet and confer

16   session earlier, we agreed to a new schedule.  Unfortunately,

17   plaintiff Hall will probably have to be available in Los

18   Angeles this time.

19           **THE COURT:**  All right.  Then your expenses to New York

20   are going to be paid for by them.

21           **MR. HOUCHIN:**  Thank you, Your Honor.

22           **THE COURT:**  That's the order.  The others can now go

23   forward in LA and San Francisco because you've screwed up the

24   whole thing that they went to a lot of trouble to work out.

25   And then -- and you do not get -- you got to take those

1  depositions without the benefit of those documents from the law

2  firm.

3       Now, if the documents from the law firm wind up giving a

4  legitimate need to re-take their depositions, okay, I'll let

5  you go back -- at your expense, not at the plaintiffs', but

6  defense expense -- and get extra time to do that.

7       I want to say something.  I think in this case the

8  plaintiffs acted reasonably.  I don't think the defense acted

9  reasonably.  I think you were trying to run up their costs.

10 Now, I know that your law firm, and I know that Hersheys,

11 probably think these food cases are crapola and it is -- okay

12 that's the way you feel.  But that's not the way I feel.  I

13 feel that both sides are going to get fairly heard.  And it is

14 wrong to run up costs for the other side just to somehow punish

15 them.  That's not the way we do business in my court.

16      All right.  Is there anything more I can do --

17      What was that other issue you wanted me to rule on?

18           **MR. HOUCHIN:**  Yes.

19           **THE COURT:**  By the way, I'm not in any way -- don't go

20 down to the judge in LA and say that I've said that you win

21 that motion and they can't get those documents.

22           **MR. HOUCHIN:**  Of course, Your Honor.

23           **THE COURT:**  I'm not saying that at all.  I do not --

24 I'm not going to intimate any ruling on whether or not that

25 subpoena should be enforced or not.  That's not my job and I'm

```
 1  │  not intimating that.
 2  │       All right.  What was the other issue you wanted me to rule
 3  │  on?
 4  │       MR. HOUCHIN:  So The Hershey Company's discovery
 5  │  responses were due on March 1.  It's my understanding that they
 6  │  served them by email, but we haven't received the responses
 7  │  yet.  I haven't reviewed them.
 8  │       During our meet and confer conference earlier, defense
 9  │  requested that we stage the responses where they would produce
10  │  documents related to malic acid first, and the product labels
11  │  and sales information later.
12  │       Plaintiffs aren't really --
13  │       THE COURT:  No.  We're not staging anything.  Here's
14  │  the other trick I've learned in this.  When you make your
15  │  motion for class certification, the defense game book number 1
16  │  is:  Oh, Judge, they don't have enough evidence to show that
17  │  this class is coherent.  Or, that there's a uniform method of
18  │  proof.  Or, -- and the answer to that is, if you dig deep
19  │  enough, well, they didn't produce them.  They wanted staged
20  │  discovery.
21  │       Well, no, we don't confuse the judge that way.  You get
22  │  all the documents.  No staged discovery.  All right?
23  │       What else can I help you with?
24  │       MR. HOUCHIN:  I believe that's everything, Your Honor.
25  │  Thank you.
```

```
 1              THE COURT:  All right.

 2         Yes, sir.

 3              MR. KWASNIEWSKI:  So I think I understand what Your

 4    Honor's answer is likely to be, but I would just like to raise

 5    we had also discussed the 30(b)(6) deposition notice that

 6    plaintiff served on Hershey.

 7         Again, our proposal is to make the witnesses with

 8    knowledge of the use of malic acid available this month in

 9    advance of the April 10 briefing deadline.  And to make

10    witnesses with knowledge of --

11              THE COURT:  Is this in the paperwork here?

12              MR. HOUCHIN:  No, it's not, Your Honor.

13              THE COURT:  Then I'm not going to deal with it, if you

14    didn't raise this in the paperwork.

15              MR. KWASNIEWSKI:  That's fine, your Honor.

16              THE COURT:  You need to bring a fresh motion so it's

17    not coming out of the left field.

18              MR. KWASNIEWSKI:  That's fine, Your Honor.

19              THE COURT:  All right.  Are we done for today?

20              MR. HOUCHIN:  Yes.  Thank you, Your Honor.

21              THE COURT:  Thank you.

22                             ---oOo---

23

24

25
```

1

2

3        **CERTIFICATE OF REPORTER**

4        I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Tuesday, March 5, 2019

8

9

10   _____

11              Vicki Eastvold, RMR, CRR
                 U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25