# Exhibit H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHANAN NATHAN PASIK,     *    Case No. 19-CV-02357(FB)
           *
       Plaintiff,    *    Brooklyn, New York
           *    January 10, 2020
    v.           *
           *
BOON TECHNOLOGIES, LLC,    *
 et al.,           *
           *
       Defendants.    *
           *
* * * * * * * * * * * * * * * * *

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            MARK SCHLACHET, ESQ.
                           Law Offices of Mark Schlachet
                           3515 Severn Road
                           Cleveland, OH   44118

For the Defendants:           JONAS NOAH HAGEY, ESQ.
                           BraunHagey & Borden LLP
                           7 Times Square
                           New York, NY   10036

                           DAVID KWASIEWSKI, ESQ.
                           MATTHEW B. BORDEN, ESQ.
                           BraunHagey & Borden LLP
                           351 California Street
                           San Franscisco, CA   94104

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

(Proceedings commenced at 9:33 a.m.)

THE CLERK:  Civil cause for a status conference, Pasik versus Boon Technologies, LLC, et al, docket No. 19Civil2357.

Would you all please state your appearances for the record, starting with the plaintiff.

MR. SCHLACHET:  Mark Schlachet for the plaintiffs.

THE COURT:  Good morning.

MR. SCHLACHET:  Good morning, Your Honor.

MR. HAGEY:  Good morning, Your Honor.  Noah Hagey, with BraunHagey & Borden, for the defense.  And I have with me my colleagues, Matthew Borden.

MR. BORDEN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. HAGEY:  As well as David Kwasniewski, and our client, one of the defendants in the case, Stephanie Boone, who is also a founder and relevant corporate officer of the corporate defendant.

THE COURT:  Good morning.  Have a seat, please.

MR. HAGEY:  Thank you.

THE COURT:  All right.  So let me start, Ms. Boone, with you.  Normally, I don't require parties to be here if they're represented by counsel.  They don't need to be here if you've got counsel handling their affairs.

As I'm sure you know by now, I'm considering various

3

forms of remedial action against you and your lawyers for things that your lawyers have done that were, frankly, shocking to me, after I warned them not to do it.

One concern I have, of course, is making sure that if I take any remedial action, I do so against the appropriate, you know, persons.

If this is something where your lawyers were doing something that -- frankly, I've never seen anything quite so bad in over 30 years as a lawyer -- if it's something that they did on their own without your knowledge or without your approval, only they should suffer the consequences.

If this is something where you knew what they were doing, and you said, yeah, go for it, then I think remedial actions might be appropriate as against you and your company.

So -- but I'm also sensitive that, you know, you have confidential privileged conversations with your counsel. So tell me as much or as little as you want. Consult with your lawyers about that.

And, also, you know, if you were in the dark about all this, that would affect -- I would you to know so that you could make any decisions. I don't want to give you any advice about what to do at all. It's none of my business.

But I want to make sure you're aware of what's going on, so that you can make any decisions you want to make about how to proceed in defending the litigation.

4

So like I said, I'm not asking you to reveal anything privileged. Totally your business. But in the absence of any information, I would have to assume that the lawyers have done what they've done as your agents, and with your approval, and this is how you want them to litigate the case.

Is that how you would like me to proceed?

MR. HAGEY: And, Your Honor, if I may --

THE COURT: I had a question for Ms. Boone. Have a seat, please.

MR. HAGEY: I appreciate --

THE COURT: Have a seat, please.

MR. HAGEY: -- that, Your Honor. Thank you.

THE COURT: Is that how you would like me to proceed?

MS. BOONE: Your Honor, I would just say that I'm not an attorney and this is the first time I've ever been involved in any sort of litigation. So I'm trying to come up to speed on what's going on here.

THE COURT: But you've talked to your counsel about this, I'm sure, before coming here today?

MS. BOONE: I mean, I've read the documentation. I can't say that I completely understand everything about why we're here.

THE COURT: Well, let me -- let me tell you why I

5

think we're here.

MS. BOONE:  Thank you.

THE COURT:  As far as I can tell, this is a routine case.  You know, sort of things that get filed all the time.  I asked the parties to, as I always do, give me submission to plan for the exchange of information, called discovery.  It took some doing to get your lawyers to participate in that.

And then when they finally did, the only pieces of information about the case that they provided wasn't about the case.  It was about an investigation of the plaintiff's counsel from the early 1980's.

And I was stunned, to say the least, but -- well, I'll just quote you what I said to them.  This is back on September 25th.  And, counsel, if you're interested, I'm starting on page four of the transcript near the bottom.

Mr. Kwasniewski, have a seat, and your submission, which I think is by far been more troubling, you've violated Rule 5(d) to put before the Court what purports to be initial disclosures, which 5(d) makes clear you shouldn't do.

And that's -- he had -- there are things that lawyers exchange with each other to provide information about the case that there's a rule that says you shouldn't file on the public docket.  Share it with each other, but you don't put it on court -- so that's what I was referring to there.

Your initial disclosures were a transparent effort

6

to sully Mr. Schlachet's reputation without accomplishing anything in the case.  Your list of witnesses include the plaintiff and personnel of the defendant.  You don't identify people, though you clearly know who your people are.  That's because they're people just identified by title or position, not here's who they are.

You don't identify any documents that you're going to use in your defense, except the one document from 40 years before the case arose.

So two completely independent reasons that are independent of your reference to, well, that 40 year old report may have some relevance to a motion to certify a class, which we'll get to in a moment, but completely independent of that, you submitted a report unilaterally, contrary to my instructions, and you submitted that within that initial disclosures in contravention of Rule 5(d), meaning they violated that other rule about what you can properly file on the public docket.

For that reason alone, I'm striking it -- the initial disclosure -- and I'm also striking the unilateral submission by the plaintiff.  Neither should have been put on the docket.

You have a fig leaf for putting that investigative report from 40 years ago on the docket, and that might serve you to get past a grievance committee investigation into

7

whether you violated the New York Code of Professional Responsibility, Rules 3.1(a) and (b)(2), about non-meritorious contentions, and also Rule 3.4(d)(1) about fairness to opposing party and counsel.

It says that a lawyer shall not, in appearing before tribunal on behalf of a client, state or allude to any matter that the lawyer does not reasonably -- emphasize reasonably -- reasonably believe is relevant or that will not be supported by admissible evidence.

So like I say, the arguments that you put in your letter might be a sufficient fig leaf to get you past discipline. I don't want to see anything like that again in this case from you or from you ever.

And it gives me some serious pause to whether your motion for admission pro hac vice should be granted. Pro hac vice meaning somebody who is not admitted in this district, is allowed to practice for purposes of the one case.

It gives me serious pause to whether your motion for pro hac vice should be granted. It was a low blow. Tell your colleagues on the case not to do it again. Am I understood?

And Mr. Kwasniewski, I notice is looking away, said, I understand, Your Honor. And I thought the matter was behind us. I thought I would never see any reference to that investigative report again.

Are you with me so far? You understand what's going

8

on?  You understand why I was concerned, right?

MS. BOONE:  Yes, Your Honor.

THE COURT:  It has nothing to do with the case. There was an argument that Mr. Kwasniewski had made about how this decades old issue might be relevant to a later inquiry about whether Mr. Schlachet is adequate counsel for a class.

And I said, you know, to me, it was obviously not that , for reasons we can get into.  I said, look, that's a fig leaf.

Based on that, you know, you can skate by being referred to a disciplinary committee and sanctioned as a lawyer for violating the Rules of Conduct.  I don't want to see it ever again.  He told me he understood and I told him to tell his colleagues.  And he told me he would.

And then when they're asking for information about the case from the plaintiff, they send to Mr. Schlachet these requests to see what the plaintiff has -- what documents the plaintiff has about this decades old investigation into Mr. Schlachet.  Obviously, something the plaintiff wouldn't have, right?  Mr. Schlachet might.

But -- and I take it you agree there's, Mr. Hagey, there's no reason to think the plaintiff would have anything. There was no good faith basis for saying the plaintiff has any such documents.  Correct?

MR. HAGEY:  Your Honor, we believe the -- in as a

9

standard in this kind of circumstance, you would ask the request to the plaintiff documents in the plaintiff's counsel possession.

THE COURT: Yes. And if they're in counsel's position -- they're in counsel's possession as the agent of the plaintiff. In other words, you can't hide something that's discoverable by giving it to counsel.

But if he has something in his possession that wasn't given to him by plaintiff, that is not subject to discovery. Right?

MR. HAGEY: Not in a class case, Your Honor.

THE COURT: Oh, for goodness sake. It -- part of the reason we're here, Ms. Boone, is that your counsel keeps making it worse.

They double down and triple down on trying to embarrass this man for something that happened decades ago, which maybe was good or bad. I don't know. It was never resolved, as your lawyers know.

Anyway, the short of it is they keep bringing it back. And if that's how you want to litigate the case, okay, that's your decision and I'll make my decisions about what should happen as a result.

If this is something where -- I don't want you to react to me, because this is something for you to discuss with your lawyers. I just want to make sure you're aware of it.

10

But if you're saying, my God, the Judge told you not to do it again and you're still doing it, and you're shocked by this, and, you know, I don't want you to be punished in your defense of the case, by having lawyers that won't listen to a Judge.

So what I'm trying to get from you, and I'll give you a break so you can talk to your lawyers before you respond to me, is all I can do is assume that a party intends to do what its lawyers are doing in its name.

And so I will take whatever action I think is appropriate here, after listening to counsel, with respect to the party.

If you want me to think otherwise that this has nothing to do with the party and it's the lawyers acting sort of on their own, I'll hear you about that. I want you to have that opportunity.

MS. BOONE: Thank you, Your Honor.

THE COURT: Do you want to take -- so do you think you understand the question that I'm asking?

MS. BOONE: I believe so, Your Honor.

THE COURT: Okay. Do you want a moment to talk it over with your lawyers?

MS. BOONE: Please.

THE COURT: Okay. We've got a conference room just outside these double doors, if you want an office.

11

(Court recessed from 9:45 a.m. to 9:52 a.m.)

MR. HAGEY:  All right.  Are we still on the record?

THE COURT:  Yes.

MR. HAGEY:  Thanks, Your Honor.  We appreciate the opportunity to confer with our client.  I think that Ms. Boone had actually prepared a statement that I think addresses --

THE COURT:  Go ahead.  I'll hear it.

MR. HAGEY:  -- the heart of the --

THE COURT:  I'll hear it.  Have a seat.

MR. HAGEY:  -- Court's --

THE COURT:  Have a seat, please.

MR. HAGEY:  -- concern --

THE COURT:  Let your client speak, please.  Go ahead.

MR. HAGEY:  Thank you, Your Honor.

MS. BOONE:  Thank you, Your Honor.

Your Honor, thank you for the opportunity to address you today.

Obviously, much of today's hearing and Your Honor's order concern issues that are outside of my expertise.  I'm a business owner and a founder of the defendant in this case, Wondercide.

We're a small company based in Austin, Texas with 25 employees.  Our mission is to make safe and effect pets protection products, like flea and tick control, to protect

12

pets and their families.

Further, these products don't contain toxic chemicals or carcinogens and are compliant with EPA 25B federal laws and US state regulations.

THE COURT:  I'm sorry.  I thought you wanted to address the issues before me today.

MS. BOONE:  I came here today because I respect your court and certainly Your Honor's order.  I understand the Court is concerned with my counsel's work in this case, and to hear that is very distressing to me.

Mr. Hagey and his firm came highly recommended to me.  I understand that Noah, Matt, and David have represented many small businesses in similar cases, so I'm inclined to trust their work and their reputations.

They appear to take pride in protecting people like me from frivolous claims and allegations extended to extort money that would only go to enrich the lawyers.

Let me get to -- this is the first time I've ever been involved, as I stated earlier, in any legal matter of this kind, and it's scary.  In fact, the only time I've ever been in court is to serve jury duty.

You know, I believe that the complaints make false allegations that our products were safe when the ingredients are minimum risk for the EPA FIFRA and grass, which by definitions, generally recognized as safe to humans and the

environment, and we've always listed our ingredients on our labels, online, and everywhere.

I know Your Honor is aware of this, but as the person most affected here, I am frustrated that a lawyer is allowed to sue us and hurt our business and, frankly, my reputation, because if he loses, there's no consequence, there's no downside, and with a simple complaint, a lawyer can cause a small business to incur hundreds of thousands of dollars in legal fees.

Without disclosing the detail of our attorney/client privilege, I know they've worked hard to understand my business to research the issues in the case and are trying to help protect me and our employees.

The money we're spending defending the lawsuits are funds we had intended to use on new hires and launch products and other things of that matter.

I think it's important to note that we're not a venture or private equity backed company. We're self-funded and the funding -- and funding the growth of our business with debt financing from the U.S. Small Business Administration.

Also, plaintiff's attorney noted in his initial filing, you know, that I received -- noted that we had received investments from "Shark Tank," which is also untrue and is public record. We were on the show and it was offered, but we did not take the investment. Only the burden of a

14

spotlight of this frivolous case.

So to answer Your Honor's question --

THE COURT:  Oh, okay.  You're going to answer it?

MS. BOONE:  I'm doing my best, Your Honor.

THE COURT:  Okay.  Good.  Thank you.  Yes.

MS. BOONE:  I don't know the rules about whether it is okay to ask for information about a plaintiff's lawyer, about misconduct.

From reading our submission to Your Honor, it appears that this is something that other courts have allowed the defendant to look into.  But as a lay person and a business owner, it strikes me wrong that a plaintiff's lawyer could ask to be a fiduciary of a group of consumers when he --

THE COURT:  I'm listening.  I'm listening very carefully.

MS. BOONE:  -- when he was previously found to have been dishonest or corrupt.  And I feel like if my character and integrity has been put into question, and I believe that it has by naming me personally, it's not fair or just to not evaluate both parties and their motivations.

Again, I don't have training or education in this area and appreciate that you have much more experience in these matters.

Just personally speaking as a client, I certainly would want to know if my attorneys had ever been found to have

15

been engaged in bribery or corruption no matter how long ago that occurred, and I feel like that's a serious matter.

You know, we -- we've spent a lot of time getting up to speed in this case, and Noah and his team have filed a good motion to dismiss, which I hope we'll win. I don't necessarily want to change teams at this time or incur expenses of adding more lawyers.

And, again, to directly answer your question, while I am aware of this, I'm a lay person and I'm not directing the strategy of when things should be filed and what should be filed. I'm relying on my counsel to represent me in those matters.

THE COURT: All right.

MR. HAGEY: And --

THE COURT: Go ahead. I'll hear --

MR. HAGEY: -- just --

THE COURT: -- whatever you have to say, Mr. Hagey.

MR. HAGEY: Thank you, Your Honor. I mean, I think the pertinent part of Your Honor's question was who is responsible for drafting their subject request for production.

THE COURT: Is that the pertinent part of my question? I didn't realize. Okay. Thank you.

MR. HAGEY: Well, I just --

THE COURT: Anything else that you want to tell me about what I had in mind?

16

MR. HAGEY:  Well, I was just going to say, Your Honor, that our firm, I take responsibility --

THE COURT:  No, no.  You were --

MR. HAGEY:  -- for requests --

THE COURT:  -- you were starting to tell me what I had in mind in my order.  What else did I have in mind? Did -- was there -- or were you finished on that score?

MR. HAGEY:  With the court's indulgence, what I was -- what I was trying to express is our understanding --

THE COURT:  No, no.  I just want to make sure I understand what you're telling me, because you are -- you're explaining to me what I had in mind, and you mentioned one thing.  Were there other things that were my primary focus that I've missed?

MR. HAGEY:  What I understood the import of Your Honor's question to be is who was responsible for drafting request for production of --

THE COURT:  All right.  You're mistaken --

MR. HAGEY:  -- 11 --

THE COURT:  -- about that.

MR. HAGEY:  -- 12 and 13.

THE COURT:  Please address, if you would, the issues I asked you to address, and then I will take it under advisement.

MR. HAGEY:  Thanks, Your Honor.  We're obviously

17

reading the countenance of the Court the -- the severity of Your Honor's order to show cause was a very unhappy moment before the beginning of the new year for sure.

I have to say that we take the Court's imprimatur regarding the interest in having an efficient non-distracting, non-superfluous proceeding in all cases, and including this one, really seriously.

It has been our practice and our experience that litigating cases, whether complex class cases, such as this, which by the way aren't routine.

I mean this -- for my client, this is a seminal, existential event for her and her company. And I appreciate that the Court has many of these on the docket, but for our client it is --

THE COURT: To the extent you're harping on routine, I meant that --

MR. HAGEY: I appreciate that, Your Honor.

THE COURT: -- in terms of case processing, there's nothing out of the ordinary, except in the way counsel acted and like I say, extraordinary in my years as a lawyer and judge.

MR. HAGEY: Your Honor, I hear those words --

THE COURT: I wasn't denigrating the importance of the case at all. Continue, please.

MR. HAGEY: Thank you, Your Honor.

The thing that struck me when we received this file and we were evaluating the background and conferring about how to look at discovery, Your Honor has set a very tight schedule. We have to do class discovery, essentially, at the same time as we're doing merits discovery, given the deadlines that are pertinent in the court's schedule.

In all my years of practice we've never seen a class counsel have in that attorney's history a report and findings from an appellate judiciary committee --

THE COURT: To the extent that you're going to for the at least fourth time in this case start going into what is on the public record about that, please consider me sufficiently familiar with what you have repeatedly put on the public record. You don't need to go into it again and I direct you not to.

MR. HAGEY: Very well, Your Honor. I appreciate that. All I was --

THE COURT: Because this is not a further forum for you to yet again do the thing that I told Mr. Kwasniewski to tell you I didn't want to see again in this case.

For the record, so that there's no misunderstanding about it, I deem it not a matter of discovery. You clearly have everything you need that further discovery on it would be cumulative.

Whether you can pass the test of relevance is not

Case 3:22-cv-02739-VC Document 42 Filed 08/09/23 Page 20 of 37 #: 310

19

what I'm deciding, but it is cumulative. I don't want to hear further public flogging of the matter.

MR. HAGEY: I understand, Your Honor. What I'm trying to do is to express and explain to Your Honor, at least from the defense counsel's perspective, that our approach in -- in the history of the United States Judiciary, Your Honor, there's only been probably 15 or 16 federal judges that have experienced something similar and resigned under the circumstances, that we could determine that face the plaintiff's counsel.

THE COURT: You're clearly not listening to me, but I will listen to you.

MR. HAGEY: Your Honor, what I'm trying to express, Your Honor is saying the gravamen of what -- the transcript of what happened in September should have been put our office on notice that even asking questions about that event was verboten. And I appreciate that that is certainly -- in hearing Your Honor and seeing Your Honor's disposition that that -- Your Honor felt like that was crystal clear.

THE COURT: When you saying seeing Your Honor's disposition, what do you mean? I am sitting here listening. I am paying close attention to what you're saying. What else?

MR. HAGEY: I meant it metaphorically, Your Honor.

THE COURT: Ahh.

MR. HAGEY: You are -- you said, and we take this to

20

heart.  You said that in all of your time, you know, practicing as an attorney that you were stunned to see this.

And all I'm trying to express to Your Honor is when we saw this very strange and very incredible documentation that, by the way, is public.  We've I think submitted to the court references.

There are -- the *New York Times,* the *Washington Post,* the *Cleveland Examiner*, all have referred to this issue. It is something that in the ordinary course of litigating a class case, of defending a class case, of testing the adequacy of counsel -- and we're referred Your Honor to the decisions of your colleagues on the bench, former colleagues on the bench, such as Judge Adelman, who is no longer with us, that part of our job, as the defense counsel, and indeed the court, is to test the veracity and ethical nature, honesty and integrity of the plaintiff into the adequacy.

The discovery that Your Honor has in front of you was intended to do just that. And one of the issues, just by way of example, that, you know, arose in the course of even these proceedings, Your Honor, is -- concerns whether or not these issues were ever noted or discussed to the New York Bar.

Now, Mr. Schlachet has represented to the court that he didn't even register with the New York Bar until 2007.  But according to the New York State Unified Court system, that's not true.  He actually was admitted in New York --

THE COURT:  Your view --

MR. HAGEY:  -- in June of --

THE COURT:  -- is that we are here to litigate Mr. Schlachet's conduct.  Is that right?

MR. HAGEY:  What I'm trying to do is --

THE COURT:  That's what you want to focus on today?

MR. HAGEY:  What I want do, Your Honor, is lay the foundation to understand -- for the court to at least appreciate a little bit that we are here in good faith --

THE COURT:  Mr. Hagey --

MR. HAGEY:  -- that the requests were in good faith.

THE COURT:  Mr. Hagey, I've told you the actions I'm considering.

MR. HAGEY:  I appreciate that, Your Honor.

THE COURT:  I will tell you because I don't relish the idea of most of these actions that I'm considering. I think the protective order is a gimme.  I'll hear you on that if you really want to be heard on that, but the others I really -- I've never referred anyone to a disciplinary committee.  I prefer to finish my career without doing it. But what are doing thus far today is not helping your cause.

MR. HAGEY:  I want to --

THE COURT:  And I say that to you case I really would prefer not to feel compelled to exercise the most drastic remedies that I've identified.

22

But if -- notwithstanding that you wish to continue litigating Mr. Schlachet's conduct this morning, by all means, go ahead.

MR. HAGEY:  Your Honor, I'm not wishing to litigate his conduct here at this hearing, but the question --

THE COURT:  But --

MR. HAGEY:  -- that the court is -- the pregnant question that is posed by the court's order is was there any foundation, first of all, was there a good faith basis under -- whether it's New York disciplinary rules, ordinary canons of Rule 11, the way in which we look at Rule 37 and the discovery conduct of counsel in cases in federal court.

I'm just trying to express to the court and provide Your Honor with information that we had a very firm good faith basis to believe that this is a problem for the certification of a class.

It's an issue that we are going to -- that the defense -- that the court, we believe, would want to have discovery on.  It's virtually -- it's literally --

THE COURT:  What do you think the plaintiff has in the plaintiff's possession, custody or control, which does not include what plaintiff's counsel owns personally?  What do you think the plaintiff's likely to have in response to these requests?  Anything?

MR. HAGEY:  Perhaps, Your Honor.

23

THE COURT: Perhaps. So this is just speculative.

MR. HAGEY: Well, any discovery is based on the premise that you don't know what the answer is going to be.

THE COURT: So the plaintiff could ask Ms. Boone to provide discovery about your diary, for example, correct?

MR. HAGEY: Your Honor --

THE COURT: Correct?

MR. HAGEY: Your Honor, that's --

THE COURT: Correct. Is it correct?

MR. HAGEY: About my diary?

THE COURT: Your diary. Or I don't know. Anything that you might have in your possession.

MR. HAGEY: I was --

THE COURT: You see I don't know what embarrassing episodes in your past. Could the plaintiff ask Ms. Boone to provide discovery about them?

MR. HAGEY: Your Honor, if --

THE COURT: Answer the question, please.

MR. HAGEY: In a case where I'm asking to be -- to serve as fiduciary --

THE COURT: Please answer my question --

MR. HAGEY: As a fiduciary for a class, I'm trying to --

THE COURT: Please answer my question about discovery of Ms. Boone.

MR. HAGEY: Your Honor, if it's patently irrelevant to the case, we are all familiar with the idea that it would be outside the ordinary scope.

THE COURT: Yes.

MR. HAGEY: But what I'm --

THE COURT: Yes.

MR. HAGEY: -- and that's why --

THE COURT: Mr. Hagey, there's a difference between what's relevant to the case and you may have very strong disagreements about that. But that's not even the point. It's a question of what do you think the plaintiff would have responsive to that?

MR. HAGEY: Your Honor, in every single case where we've ever litigated class adequacy issues and asked for information that would go to the nature of, you know, potentially how a -- you know, a plaintiff allegedly came to present the allegations, we've litigated many of these cases where at their deposition the plaintiff ends of acknowledging and admitting that they didn't even know or understand what was in the complaint.

There are some strange circumstances in a situation like this where we have an attorney who literally is based in Ohio, who doesn't even have a New York office, who routinely litigates --

THE COURT: All right. Stop.

25

MR. HAGEY:  Your Honor --

THE COURT:  Stop.  Literally every question -- maybe not literally.  That would be too strong.  But most of the questions -- to get to your conduct, produce an answer where it's -- you turn it around to talk about Mr. Schlachet.

MR. HAGEY:  I -- because --

THE COURT:  Excuse me.

MR. HAGEY:  Sorry, Your Honor.

THE COURT:  Is there a substantive point about specific forms of -- specific remedial measures not addressed in your papers that you feel should be addressed today?

MR. HAGEY:  Respectfully, Your Honor --

THE COURT:  And let me just finish -- sorry.  The reason I say that is I truly feel that in our colloquy you are doing yourself and your client more harm than good, and I've tired to warn you off of that.

I am prepared to resolve the matter based on your submissions.  My hope is that you'll allow me to do that without making things worse, but if there's something that you feel would benefit your side of things and your client's side of things before we adjourn today, I will give you that opportunity.

MR. HAGEY:  Thank you, Your Honor.

I must admit I feel on tenuous and totally uncertain ground. I'm trying to provide the court with what I hoped

26

would be information that might be foundationally relevant to the court's concern as to whether defense counsel, much less our client, had a malignant intent, had some sort of spurious and irrelevant and frivolous motivation in seeking the discovery we did not.

I can only tell Your Honor that in the 20 years of practice approximately here in New York and in defending these kinds of class cases, and companies and businesses, small businesses like Ms. Boone's, that this is something that we deeply believe to be relevant and that just as Judge Adleman was remarking in the *Kingstep Weslin* (ph) case, the inquiry into the past conduct of class counsel is one of the touchstone issues that you deal with under Rule 23.

And I feel like -- I understand the divide and the tension that Your Honor is directing about not wanting to get into frivolous, harassing issues. We echo the court's concern, but at the same time, Your Honor, we have issues that have to be discovered.

And I don't know how to do that, and I don't know to bring to the court's attention. I don't know how to have that issue fleshed out in a circumstance where I didn't even know -- reading the transcript, I didn't even know that that was off limits.

I understood that the court did not want us to be filing -- refiling the Sixth Circuit Judicial Investigative

27

Committee's report in the record again, without some foundation and guidance from Your Honor.

But certainly, just as Judge Adelman was reflecting on the fact --

THE COURT: When we're done today, would you give me a count of how many times you're going to cite that? Go ahead.

MR. HAGEY: Well --

THE COURT: Apparently, I haven't heard it enough from you today to know that you're relying on it, so just tell me how many more times you'd like me to hear about it.

MR. HAGEY: Sorry. It's --

THE COURT: What's the over/under? Ten, 15.

MR. HAGEY: Maybe the echo of the case, and I apologize, Your Honor, but when we -- when you're looking at counsel such as us, all I would respectfully ask is that you understand that we do come here with an interest in trying to see the justice done, in trying to aid in the efficient resolution of this matter.

I don't know how to do that in a class case where I am -- I feel like I'm chilled -- like I don't know what questions to ask in a deposition. I don't know what kinds of information we can request from the plaintiff.

THE COURT: Really? Okay. I'm sorry you find yourself in that position, because the one and only issue that

28

has come up as a point of contention is your insistence of relitigating matters from the early 1980's that have literally nothing to do with the substance of the plaintiff's claims.

So I think most lawyers --

MR. HAGEY: Your Honor has --

THE COURT: Excuse me. I'm not finished speaking.

I think most lawyers would not find it difficult to figure out how to conduct discovery in those circumstances. I regret that you do. I'm not trying to be opaque.

MR. HAGEY: I understand that.

THE COURT: I'm not trying to create a sense of uncertainty about whether you can inquire into the merits of the case.

MR. HAGEY: The --

THE COURT: Now is it your intention still to inquire in any form to seek more information in discovery about the 1982 report or the investigation surrounding it?

MR. HAGEY: Without guidance from this court and an opportunity to actually have the potential relevance of that issue actually briefed and presented to the court, whether under seal or otherwise, no. I feel that we are in jeopardy should we even get into that territory at this point.

THE COURT: Okay. Is there anything else that you think you're in jeopardy if you inquire into?

MR. HAGEY: If we inquire into any of the -- you

know, any of the past conduct of the plaintiff's counsel?  I don't know.  Is -- I don't know where that's fair game or not --

THE COURT:  Are these instances of conduct that you're --

MR. HAGEY:  -- at this point, based on the court's --

THE COURT:  All right.

MR. HAGEY:  -- direction.

THE COURT:  All right.  Yeah. Okay.  So look.  Let's do it this way.

Anything surrounding that investigation I think is cumulative at this point, given the extensive information that you know about and have placed on the public record.

If there's something else about plaintiff's counsel separate from the merits of the claims that you think is properly the subject of discovery, file a motion under seal. I don't want you to get into trouble for doing something that you think -- you're unsure about.  And anything else, I don't know what you'd be worried about.

MR. HAGEY:  It's questions during deposition.  For example, I'm just -- Mr. Schlachet's website extensively refers to --

THE COURT:  Mr. Hagey --

MR. HAGEY:  -- his history as a bankruptcy --

30

THE COURT: -- the case is about the plaintiff's claims. It's not about Mr. Schlachet.

MR. HAGEY: But we have a duty to investigate Rule 23 --

THE COURT: You have other duties under the Code of Conduct, sir.

MR. HAGEY: Your Honor, I appreciate that.

THE COURT: And I'm not sure, honestly. I'm honestly not sure. Or if you do appreciate that, I'm not sure that you think that they are equally important as your duty to overturn every stone about opposing counsel's history.

The 1982 investigation, further discovery about that would be cumulative and harassing. Don't do it.

MR. HAGEY: That is --

THE COURT: I will take under advisement the other forms of relief that I discussed.

MR. HAGEY: We had -- thank you, Your Honor.

THE COURT: Is there anything further for today?

MR. HAGEY: Here's the quandary that we sit in.

I don't know whether Your Honor believes that it would be appropriate for us to make a fuller record.

You obviously are interested in taking -- you've communicated your interest in taking the matter under submission. You don't want to receive or hear necessarily any of the other information we have.

31

I want to be respectful of that. I'm trying to read Your Honor's -- what Your Honor is telling us. I -- we have a --

THE COURT: Look. You have fully responded --

MR. HAGEY: I appreciate the court's --

THE COURT: You have fully responded on the papers. You've responded twice. You --

MR. HAGEY: May I ask you a question?

THE COURT: Excuse me. I asked you to respond to the order to show cause by December 31st. You did it on January 1st. No big deal.

Then you filed something supplemental. Okay. I let you do it. I assume you've been fully heard on the papers. I gave you an opportunity to speak today and it was, again, all about Mr. Schlachet and your duty to investigate him. Okay.

I don't think that there is anything further that is needed. Certainly, you've had a full opportunity to be heard on the papers.

MR. HAGEY: Well, the only question I would then have for the court is whether the -- we had asked to be able to introduce certain demonstrative exhibits. These include Mr. --

THE COURT: I saw what was in your letter. You want to have press reports about Mr. Schlachet from the 1980's.

MR. HAGEY: Because the premise of the protective

32

order was that somehow the issues that were within the Sixth Circuit investigatory findings were unknown and that his client would not have ever been able to be aware of them. And I just --

THE COURT:  That is not -- that is not it.

In any event, I certainly have before me your -- the links to the items.  Was there something else you wanted to hand up?

MR. HAGEY:  Yes, Your Honor.

THE COURT:  Hand it up and let's be done with it today, shall we?

MR. HAGEY:  Thank you, Your Honor.

THE COURT:  Just hand up what you're going to hand up.

MR. HAGEY:  Well --

THE COURT:  Just hand it up, Please. You've had your letter saying what you're giving me is demonstrative.  Let's have it, please.

MR. HAGEY:  May I just ask the court a question before I approach the bench?

THE COURT:  If the court considers these materials to be part of the record, then I don't think we need to go through that formality.

If Your Honor would appreciate having the printouts, we have copies here for yourself and for counsel. We'd be

33

happy to provide them to the court.

THE COURT: Whatever you want to do. Whatever you want to do. I'm not stopping you from doing what you to do, Mr. Nagey [sic]. Please do it so we can finish up. I've got others waiting to proceed today.

MR. HAGEY: Thank you, Your Honor.

THE COURT: Just hand things over. I don't need a speech.

(Pause.)

MR. HAGEY: May I just state for the record just the title of the document? I won't go into a speaking discussion of what it contains.

This is printout of a section of Mr. Schlachet's website, Your Honor. The next is a printout of his LinkedIn file and I will provide copies to counsel of this material.

The other is a copy of the media and press reports that were referenced in our letter brief, Your Honor. And I also have -- I also have a copy of the Sixth Circuit's Judicial Counsel Investigating Committee report, which I submit --

THE COURT: The one I struck from the record earlier. Go ahead.

MR. HAGEY: No, we would be putting this under seal, Your Honor. I don't need this on the public record at all. I'm simply asking it to be considered as part of the record of

34

these proceedings.

I have no idea what Your Honor has in mind in terms of sanctions or other remedies.

THE COURT:  Yes, you do. I made it very clear.

MR. HAGEY:  Well, we are standing here in jeopardy.

THE COURT:  Yup.  That's correct.

MR. HAGEY:  Is there any objection, counsel, to having this report placed under seal to address any concerns that counsel had raised and the court has raised?

THE COURT:  Address me.

MR. HAGEY:  Your Honor, are there any objections to placing this under seal, to comply with the court's order relating to that issue?

THE COURT:  As you say, it's a public document?

MR. HAGEY:  We understand that this is a public document.

THE COURT:  Than I don't see any need to put it further on the record.

MR. HAGEY:  Okay. I just --

THE COURT:  Have a seat.  Anything from you, Mr. Schlachet?

MR. SCHLACHET:  Your Honor, I don't think that absent the court's inquiry that I'm going to make any remarks.

THE COURT:  Okay.  So I have granted the protective order.  There will be no further discovery on the 1982

35

investigation of the surrounding circumstances and this is not a ruling on relevance.

It is a ruling on cumulativeness and proportionality, which is not to say I don't have grave concerns about relevance, but I know you disagree about that and I just don't want everybody to be wasting their resources litigating it on a ground that is not an independent basis for my ruling.

Should there be other discovery requests that you want to make that pre-date the substantive matters in this case, or that regardless of date are purely about Mr. Schlachet -- and when I say purely about, I don't expect to see game playing about well, it's about what he told his client. If it's about his conduct, file a motion under seal for leave to do it.

And I am going to take under advisement other remedies.  Whatever rationalization you might come up with for how you've acted in this case, I would be hard pressed to believe that you didn't understand that you were doing something that you were not supposed to do.  And how best to address that is really what I have to think about.

Have a good day, everybody.

MR. SCHLACHET:  Thank you, Your Honor.

MR. HAGEY:  Thank you, Your Honor.

(Proceedings concluded at 10:25 a.m.)

36

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Christine Fiore*

_____          January 22, 2020

Christine Fiore, CERT

Transcriber